FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 26, 2020

SEAN F. MCAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SELIKA C.,[1] | No. 1:19-cv-03190-MKD |
| Plaintiff, | |
| vs. | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | ECF Nos. 15, 16 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 15, 16. The parties consented to proceed before a magistrate judge. ECF No. 6. The Court, having reviewed the administrative record and the parties' briefing,

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

ORDER - 1

is fully informed.  For the reasons discussed below, the Court grants Plaintiff's

motion, ECF No. 15, and denies Defendant's motion, ECF No. 16.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g);

1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159

(quotation and citation omitted).  Stated differently, substantial evidence equates to

"more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

citation omitted).  In determining whether the standard has been satisfied, a

reviewing court must consider the entire record as a whole rather than searching

for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more

severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age,

education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§

404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other

work, the analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that 1) the claimant is

capable of performing other work; and 2) such work "exists in significant numbers

in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v.*

*Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On August 6, 2015, Plaintiff applied both for Title II disability insurance

benefits and Title XVI supplemental security income benefits alleging a disability

onset date of February 1, 2012. Tr. 85-86, 250-64. The applications were denied

initially and on reconsideration. Tr. 145-53; 156-69. Plaintiff appeared before an

administrative law judge (ALJ) on September 26, 2017, but the hearing was

postponed in order to allow Plaintiff an opportunity to attend a consultative

examination. Tr. 37-44. Plaintiff again appeared before an administrative law

judge (ALJ) on April 3, 2018. Tr. 45-84. At the hearing, Plaintiff's disability onset date was amended to June 11, 2014 to avoid res judicata issues from a prior claim. Tr. 16, 47-48. On July 18, 2018, the ALJ denied Plaintiff's claim. Tr. 13-34.

At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 11, 2014. Tr. 19. At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, hypertension, gastrointestinal disorder, right ankle fracture, and autoimmune disease. Tr. 19.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. Tr. 20. The ALJ then concluded that Plaintiff had the RFC to perform light work with the following limitations:

//

//

//

//

//

//

//

ORDER - 7

> [Plaintiff] can lift and carry 20 pounds occasionally and ten pounds
> frequently; sit for six out of eight hours, but only one hour at a time
> after which she has to change position for a few minutes; stand and
> walk for four hours; occasionally push and pull with the right lower
> extremity, such as the operation of foot pedals; frequently reach
> overhead bilaterally; frequent fine fingering, gross handling, and
> feeling; all postural activities limited to occasional, except she can
> never climb ladders, ropes, or scaffolds; and she must avoid
> concentrated exposure to extreme cold and heat. She is capable of
> superficial contact with the general public (superficial means working
> with the public should not be the focus of the job, and she can work in
> the same room with co-workers, but she should not have coordination
> of activity with co-workers).

Tr. 22.

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. Tr. 27. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as office helper, storage rental clerk, and courier. Tr. 28. Therefore, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of June 11, 2014, though the date of the decision. Tr. 29.

On June 16, 2019, the Appeals Council denied review of the ALJ's decision, Tr. 1-7, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

ORDER - 8

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated Plaintiff's symptom claims;

2. Whether the ALJ properly evaluated the medical opinion evidence;

3. Whether the ALJ conducted a proper step-two analysis; and

4. Whether the ALJ conducted a proper step-three analysis.

ECF No. 15 at 2.

**DISCUSSION**

**A.     Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on clear and convincing reasons in discrediting her symptom claims. ECF No. 15 at 18-21. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16–3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably

be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th 1996); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or

other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c), 416.929(c). The ALJ is instructed to "consider all of the evidence in an individual's record," to "determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence. Tr. 23.

### 1. Inconsistent with Objective Medical Evidence

The ALJ found that Plaintiff's symptom complaints were inconsistent with the objective medical evidence. Tr. 23. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by the objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991). However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other

symptoms, in determining the severity of a claimant's symptoms and their

disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2),

416.929(c)(2).

Here, the ALJ discussed Plaintiff's alleged symptoms due to a number of

rheumatic illnesses that she claimed caused her to be unable to work. Tr. 23. The

ALJ cited Plaintiff's reports that her impairments caused difficulties with train of

thought, focus, and decision making. Tr. 23 (citing Tr. 295). The ALJ also noted

Plaintiff's allegations of back pain, right leg pain as of 2016 that included limited

mobility in her right ankle with atrophy, swelling and inflammation in her hands,

dry skin on her lower extremities, and easy fatigue. Tr. 23. However, the ALJ

found that Plaintiff's treatment records showed generally negative findings without

clinical confirmation of the variety of rheumatic conditions considered. Tr. 23-25;

*see, e.g.,* Tr. 644 (May 30, 2013: vasculitis was not confirmed due to negative

sedimentation rates and negative signs of inflammation in urine testing and on

ultrasound); Tr. 373 (April 4, 2014: Plaintiff was thought to have "probable"

mixed connective tissue disease suggested by ankylosing spondylitis versus

scleroderma; she was advised at that time that her hand swelling was likely due to

Prednisone and she was discontinuing Ibuprofen); Tr. 989-90 (May 2, 2014:

examinations confirmed that significant evidence of an inflammatory or infectious

process were not in play); Tr. 543-44 (May 30, 2014: Plaintiff was evaluated for

possible enteropathic spondyloarthritis with suggestion of sacroiliitis; earlier hip x-rays taken on February 14, 2014, showed only mild iliac predominantly subchondral sclerosis about the sacroiliac joints, possibly reflecting early sacroiliitis); Tr. 364-66 (September 10, 2014: Plaintiff was evaluated for multiple conditions, including nephritis, systemic lupus erythema, and vasculitis, but she was not diagnosed with any of these conditions); Tr. 1086 (October 8, 2015: a treating provider noted that Plaintiff had "a somewhat vague rheumatologic condition"); Tr. 1036-37 (November 2, 2015: Plaintiff was stable with laboratory studies still not showing evidence of systemic rheumatologic disease). The ALJ determined that, while Plaintiff complained of fatigue, her lack of a clear rheumatic condition did not support the need to provide for time off-task or additional absences as part of her workplace restrictions. Tr. 25.

As for Plaintiff's gastrointestinal complaints, the ALJ found that her allegations were "mostly a constellation of subjective symptoms without a clear cause." Tr. 26. The ALJ noted that Plaintiff complained of constipation, abdominal pain, and minimal weight loss. Tr. 26 (citing Tr. 369, 544). The ALJ observed that Plaintiff attributed some of her gastrointestinal symptoms to her Methotrexate use, but she had stopped Methotrexate by 2014. Tr. 26 (citing Tr. 383). Further, the ALJ noted that a colonoscopy performed in June 2014 revealed rectal polyps and a sigmoid polyp, but all were biopsied and found to be benign.

Tr. 26 (citing Tr. 358). The ALJ also found no evidence of inflammatory bowel disease. Tr. 26 (citing Tr. 552-53).

As to Plaintiff's complaints of right ankle pain, the ALJ determined that the objective evidence did not support the severity of her allegations, as Plaintiff had a history of a right ankle fracture remote to the relevant period. Tr. 23 (citing Tr. 840); *see, e.g.,* Tr. Tr. 824, 827, 878 (February 14, 2012: Plaintiff had hardware removed from her right ankle following a prior right ankle fracture and noted that she "felt fairly good after the surgery with definitely a decrease in discomfort"); Tr. 838 (February 27, 2012: Plaintiff's surgeon advised Plaintiff to increase her mobility); Tr. 843 (March 25, 2012: Plaintiff was involved in another motor vehicle accident and sustained a recurrent malleolar fracture; after this second injury, Plaintiff was advised to reduce weight bearing for three to four weeks); Tr. 856 (June 29, 2012: x-rays of Plaintiff's right ankle showed a cortical defect in the medial malleolus with thinned transverse linear lucency extending into the distal tibia, but no new fracture or subluxation); Tr. 838-39 (July 3, 2012: Plaintiff complained of ongoing, burning pain in her right lower limb from her tibia through her foot, and complained that her foot often gave out; Plaintiff was observed to ambulate with a slight limp on the right side); Tr. 840 (July 30, 2012: a provider noted that any decreased range of motion in Plaintiff's right ankle at that time would be permanent given that she previously had "fairly full" courses of physical

therapy).  Further, the ALJ observed that during a physical examination in 2016, after she had been off her medications for six months, Tr. 818, Plaintiff had only a minimally antalgic gait favoring her right leg, she was able to walk on her heels and toes, tandem walk, stand on either leg, hop, and perform a full squat, Tr. 821. Tr. 25.  The ALJ noted that Plaintiff sat comfortably, was able to rise from a chair without assistance, and her motor strength was 5/5 throughout in all major muscle groups except the flexors and extensors of the right hip, which was 4+/5, Tr. 820, 822.  Tr. 25.  The ALJ also noted that Plaintiff "rarely complained of this prior injury or residuals from this prior injury after 2014."  Tr. 23-24.  The ALJ accommodated this prior injury by limiting Plaintiff to standing and walking for only four hours, and only occasionally pushing and pulling with the right lower extremity.  Tr. 23.

As to Plaintiff's complaints of back pain, generalized stiffness, pain in her hands, and skin discoloration, the ALJ found that the objective evidence was inconsistent with the level of severity alleged.  Tr. 23-25; *see, e.g.,* Tr. 608 (May 22, 2013: Plaintiff was diagnosed with acute somatic dysfunction of the thoracic spine with mild muscle spasm); Tr. 638-39 (May 31, 2013: an examination revealed decreased motor strength in the right lower extremity at 4/5 compared to the left; Plaintiff was diagnosed with right lower extremity radiculopathy); Tr. 494-97, 657, 659 (May, June, and July 2013: cervical, thoracic, and lumbosacral spine

imaging were normal); Tr. 379, 388, 430 (December 12, 2013, February 14, 2014, and March 14, 2014: Plaintiff complained of left paraspinal tenderness and could not touch her fingers to her toes due to stiffness, but overall, her neurologic symptoms were not felt to be related to morphea); Tr. 404 (December 31, 2013: treatment notes indicated that Plaintiff had a very unusual constellation of mostly neurologic-type symptoms, and an examining provider wondered how much of her symptoms were psychiatric in nature); Tr. 821 (March 4, 2016: during a physical examination, it was confirmed that Plaintiff's morphea exhibited as pigment spots and there was no description at that time or earlier that her pigment spots or morphea signs consisted of more problematic open lesions); Tr. 818-22 (March 4, 2016: Plaintiff reported that over the past several years, her right leg pain had decreased in intensity; upon physical examination, Plaintiff had only a minimally antalgic gait favoring her right leg; she was able to walk on her heels and toes, tandem walk, stand on either leg, hop, and perform a full squat; she sat comfortably, was able to rise from a chair without assistance, her range of motion was normal throughout, with the exception of her back; Plaintiff's motor strength was 5/5 throughout in all major muscle groups except the flexors and extensors of the right hip, which was 4+/5); Tr. 374 (April 1, 2014: Plaintiff was advised that her nonspecific swelling and back pain might be a manifestation of withdrawal from her medications); Tr. 700, 981, 987 (April 1, 2014: a sacroiliac joint MRI

showed no acute findings); Tr. 564 (October 4, 2014: Plaintiff demonstrated

decreased lumber range of motion upon examination; she also had tenderness to

palpation in the thoracic and lumbar spine; overall, there was no evidence of

inflammatory joint disease, but she had benign hypermobility joint syndrome).

Further, the ALJ noted that Plaintiff self-reported Raynaud's disease, but this was

not clearly confirmed.  Tr. 25-26 (citing Tr. 369); *see, e.g.,* Tr. 386, 398 (February

2014: Plaintiff complained of swelling in her hands, with her fingers turning white

and painful when cold; however, upon examination her hands were only slightly

puffy); Tr. 390, 398-99 (February 2014: another examination did not find skin

thickening or synovitis; there was only mild tenderness of the penarticular

structures of her index fingers bilaterally; her hands were also described as having

a normal appearance without mottled, white, blue, or red appearance; the diagnosis

she received was unclear, described as "Raynaud syndrome type complaints"); Tr.

820-23 (March 4, 2016: Plaintiff's hands were slightly swollen and red, but with

only diffuse mild tenderness of the IP, MCP, and wrist joints; upon examination,

she was able to make a fist with each hand, tum a doorknob, tie a pair of shoes,

manipulate a button, and pick up a coin; her grip strength was 4+/5 and bilaterally

symmetrical).  The ALJ also noted that in June 2014, Plaintiff was diagnosed with

mixed connective tissue disease and chronic nephritis, but these conditions were

self-reported when she presented for that evaluation.  Tr. 26 (citing 413).  The ALJ

observed that upon evaluation, Plaintiff had normal range of motion, normal musculoskeletal strength, no tenderness, no swelling, no deformity, and a normal gait. Tr. 26 (citing Tr. 415). Further, the ALJ observed that Plaintiff "was unable to identify any cause of disability as of 2014, the beginning of the period under consideration," nor could she remember what symptoms she was having in 2014 or 2015. Tr. 23. The ALJ noted that Plaintiff "mainly just said her father encouraged her to apply for disability." Tr. 23.

Plaintiff argues that the ALJ's findings are not supported by the record, and instead, the objective findings are consistent with her allegations. ECF No. 15 at 18-21. It is the ALJ's responsibility to resolve conflicts in the medical evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Where the ALJ's interpretation of the record is reasonable as it is here, it should not be second-guessed. *Rollins*, 261 F.3d at 857. The Court must consider the ALJ's decision in the context of "the entire record as a whole," and if the "evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks omitted). Here, the ALJ reasonably concluded, based on this record, that the objective medical evidence did not support the level of impairment alleged by Plaintiff. Tr. 23-26. The ALJ's finding is supported by substantial evidence and was a clear and convincing reason, in conjunction with Plaintiff's responsiveness

to medication and discontinuation of all medication, *see infra*, to discount

Plaintiff's symptom complaints.

### 2. *Effectively Controlled with Medication*

The ALJ discounted Plaintiff's symptom claims because her morphea, back

pain, and radiculopathy were generally well-controlled with medication. Tr. 23,

25. The effectiveness of medication and treatment is a relevant factor in

determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3),

416.929(c)(3) (2017); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001,

1006 (9th Cir. 2006) (recognizing that conditions effectively controlled with

medication are not disabling for purposes of determining eligibility for benefits)

(internal citations omitted); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1040

(9th Cir. 2008) (A favorable response to treatment can undermine a claimant's

complaints of debilitating pain or other severe limitations.).

Here, the ALJ noted that Plaintiff had a history of morphea lesions on her

extremities and trunk, which were treated with steroids and intermittent

Methotrexate since 2008. Tr. 24 (citing Tr. 364, 378). The ALJ cited treatment

records showing that Plaintiff's morphea was generally well-controlled with

medication. Tr. 23; *see, e.g.,* Tr. 443 (July 17, 2013: Plaintiff reported that

"overall her symptoms are greatly improved" on Prednisone and the symptomatic

morphea skin lesions were less bothersome); Tr. 484 (August 30, 2013: Plaintiff's

pain and itchiness felt better with Prednisone); Tr. 479, 520 (October 8, 2013: Plaintiff's dermatologist confirmed that her morphea improved with Prednisone with no new plaques, her erythema resolved, and her pain and itch improved); Tr. 392, 531 (February 14, 2014: Plaintiff reported that her symptoms had improved "significantly" on Prednisone); Tr. 381 (March 16, 2014: Plaintiff reported that after starting Prednisone she noticed less pain and itch in her morphea lesions, the lesions that were red were now brown, and she had not developed new lesions while on Prednisone); Tr. 753 (March 12, 2015: Plaintiff reported that her morphea had darkened and was firmer over some areas, so provider started Plaintiff on a low dose of Prednisone, noting that it had been helpful to her symptoms in the past); Tr. 730, 821, 1085, 1088, 1090 (treatment records from 2015, 2016, and 2017 showed Plaintiff's morphea exhibited as pigment spots not the more problematic open lesions). The ALJ also determined that Plaintiff's back pain and radiculopathy was responsive to medication. Tr. 25; *see, e.g.,* Tr. 642 (June 2, 2013: a hospital treatment note showed that Plaintiff's radiculopathy with right leg weakness was improved after medication); Tr. 755 (February 2015: Plaintiff reported that her pain medication was working well).

Plaintiff argues that the ALJ's finding that her morphea was "generally well-controlled" was not supported by the record. ECF No. 15 at 19. However, Plaintiff's citations do not support that assertion. For example, Plaintiff cites a

ORDER - 20

treatment note from May 2013 where she had 70 morphea spots on her body, Tr. 611, along with a report from March 2016 showing that she had over 30 spots, Tr. 821, to demonstrate that her morphea was not under control. ECF No. 15 at 19. However, these two citations to the record show that Plaintiff had less than half of the amount of morphea spots in March 2016 than she did three years earlier. While Plaintiff also cites a treatment note from March 2016 stating her morphea was still active, the same note indicated that Plaintiff reported less pain and itch, the lesions that were red had turned brown, and she had not developed new lesions while on Prednisone. Tr. 381. Plaintiff cites to two records from October and November 2015, showing that she had "a few new patches," but as noted *supra*, treatment records from 2015, 2016, and 2017 showed Plaintiff's morphea exhibited as pigment spots not the more problematic open lesions. Tr. 730, 821, 1085, 1088, 1090. On this record, the ALJ reasonably concluded that Plaintiff's morphea and pain, when treated with medication, were not as limiting as Plaintiff claimed. This was a clear and convincing reason supported by substantial evidence to discount Plaintiff's symptom claims.

### 3. Lack of Treatment

The ALJ found that Plaintiff's symptom complaints were inconsistent with evidence that she stopped taking all medications. Tr. 23, 25. An unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of

treatment may be considered when evaluating a claimant's subjective symptoms. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). Evidence of a claimant's self-limitation and lack of motivation to seek treatment are appropriate considerations in determining the credibility of a claimant's subjective symptom reports. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001); *Bell-Shier v. Astrue*, 312 Fed. App'x 45, *2 (9th Cir. 2009) (unpublished opinion) (considering why plaintiff was not seeking treatment). When there is no evidence suggesting that the failure to seek or participate in treatment is attributable to a mental impairment rather than a personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the alleged severity of complaints. *Molina*, 674 F.3d at 1113-14.

Here, the ALJ determined that Plaintiff's discontinuation of all medications detracted from the reliability of her symptom allegations. Tr. 23, 25. Although Plaintiff reported as of 2016 that she was unable to work due to right leg pain, limited mobility in her right ankle with atrophy, back pain, swelling and inflammation in her hands, dry skin on her lower extremities, and easy fatigue, the ALJ noted that Plaintiff had stopped taking pain medications around 2015 and never resumed her pain medications. Tr. 23, 25; *see., e.g.,* Tr. 1055 (June 2015: Plaintiff discontinued all of her medications except for the occasional use of Albuterol); Tr. 1084 (September 2015: Plaintiff reported that she was not on any

medication except for Lisinopril); Tr. 818 (March 2016: Plaintiff reported she had been off all of her medications for approximately six months); Tr. 1075 (November 2017: Plaintiff reported that she had not been taking any medications for the past 18 months). The ALJ also observed that Plaintiff confirmed she stopped seeing doctors because she was tired of seeing so many specialists and traveling to appointments. Tr. 23; *see* Tr. 818 (March 4, 2016: Plaintiff reported that she did not get along with the doctors at the University of Washington Lupus Clinic and has stopped taking all of her medication). Finally, the ALJ stated that Plaintiff denied noticing any real difference in her overall comfort since discontinuing her medications. Tr. 23, 25 (citing Tr. 818).

Plaintiff argues that she provided evidence of good reasons for not taking medication for her symptoms, and therefore, her symptom testimony cannot be rejected because she stopped all of her medications. ECF No. 15 at 20-21. However, the ALJ addressed Plaintiff's episode of acute renal failure and noted that it was resolved before the relevant period. Tr. 26 (citing Tr. 447, 642). The ALJ also noted that at least one provider opined in 2013 that Plaintiff's episode of renal failure might have been caused by her high use of nonsteroidal anti-inflammatory drugs, Tr. 660, while another record attributed her episode of acute renal failure to an IV injection of Toradol, Tr. 818, 923. Tr. 26. The ALJ also found that Plaintiff's renal function and hypertension was stable and amenable to

treatment thereafter, noting that it was confirmed in September 2014 that Plaintiff

had maintained normal renal function since her single episode of acute renal

failure. Tr. 26 (citing Tr. 557). Based on this record, the ALJ reasonably

determined that Plaintiff's discontinuation of all medications during the relevant

period was inconsistent with her claims of disabling conditions. Tr. 23, 25. This

was a clear and convincing reason to discredit Plaintiff's symptom testimony.

**B.    Medical Opinion Evidence**

Plaintiff challenges the ALJ's evaluation of the medical opinions of Erica

Moyer, D.O., and Emma Joan H. Billings, Ph.D. ECF No. 15 at 13-18.

There are three types of physicians: "(1) those who treat the claimant

(treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant

[but who review the claimant's file] (nonexamining [or reviewing] physicians)."

*Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).

Generally, a treating physician's opinion carries more weight than an examining

physician's opinion, and an examining physician's opinion carries more weight

than a reviewing physician's opinion. *Id.* at 1202. "In addition, the regulations

give more weight to opinions that are explained than to those that are not, and to

the opinions of specialists concerning matters relating to their specialty over that of

nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2011) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830–31). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews*, 53 F.3d at 1041.

### 1. Erica Moyer, D.O.

On October 8, 2015, treating physician Erica Moyer, D.O., recommended that Plaintiff cut down to part-time work, with the expectation that she would experience improvement with the appropriate treatment. Tr. 1087. Dr. Moyer's assessment that Plaintiff should only work part-time was contradicted by examining physician William Drenguis, M.D., Tr. 818-23, and State agency medical consultant, James Irwin, M.D., Tr. 113-25. Therefore, the ALJ was

required to identify specific and legitimate reasons to discredit Dr. Moyer's opinion. *Bayliss,* 427 F.3d at 1216.

The ALJ failed to address Dr. Moyer's assessment that Plaintiff should only work part-time. A statement by a medical source that a claimant is "unable to work" is not a medical opinion and is not due any special significance. 20 C.F.R. §§ 404.1527(d), 416.927(d). Nevertheless, the ALJ is required to "carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner." SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996); *Holohan,* 246 F.3d at 1202-03 ("If the treating physician's opinion on the issue of disability is controverted, the ALJ must still provide 'specific and legitimate' reasons in order to reject the treating physician's opinion."). "If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record." SSR 96-5p, 1996 WL 374183, at *3.

Here, Dr. Moyer's opinion that Plaintiff was limited to part-time work was equivalent to a statement that she was unable to work, as a residual functional capacity is the claimant's ability to perform work activities on a "regular and continuing basis," which means "8 hours a day, for 5 days a week, or an equivalent work schedule." *See* SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ

failed to offer any discussion about Dr. Moyer's assessment that Plaintiff was limited to part-time work. This was error. Though the ALJ was not bound by Dr. Moyer's statement concerning the ultimate issue of disability, she nevertheless had the obligation to state legally sufficient reasons for rejecting Dr. Moyer's opinion. The ALJ is instructed to readdress this medical opinion evidence on remand.

    *2. Emma Joan H. Billings, Ph.D.*

    On November 14, 2017, Emma Joan H. Billings, Ph.D., clinical psychologist, examined Plaintiff and completed a psychological assessment. Tr. 1074–81. On November 20, 2017, Dr. Billings completed a mental medical source statement. Tr. 1071-73. Dr. Billings opined that Plaintiff had moderate difficulties in the ability to understand, remember, and carry out complex instructions, and respond appropriately to usual work situations and changes in a routine work setting. Tr. 1071-72. Dr. Billings also opined that Plaintiff had marked difficulties in the ability to make judgments on complex work-related decisions. Tr. 1071. She found that Plaintiff had mild difficulties in the ability to interact appropriately with coworkers, and no difficulties in the ability to understand, remember, and carry out simple instructions, make judgments on simple work-related decisions, and interact appropriately with the public and supervisors. Tr. 1071-72. When asked if there were any other capabilities that were affected by Plaintiff's impairment, Dr. Billings noted "repeating directions." Tr. 1072. Further, Dr.

Billings opined that Plaintiff would likely have difficulty working in any situation that would require frequent public contact, she would need a calm and peaceful environment with low stress, and her difficulty continuing to complete tasks without resting would be a barrier in a work environment. Tr. 1081.

The ALJ gave significant weight to Dr. Billings' opinion as to Plaintiff's public contact limitation. Tr. 27. The ALJ gave minimal weight to Dr. Billings' opinion that Plaintiff would need a calm and peaceful environment with low stress, and that Plaintiff would have difficulty continuing to complete tasks without resting. Tr. 27. Here, no other provider rendered an opinion reflective of Plaintiff's mental complaints, so the Court assumes without deciding that the ALJ was required to provide clear and convincing reasons to discredit Dr. Billings' opinion.[2] *Bayliss,* 427 F.3d at 1216.

### a. Relies on Self-Reports

The ALJ gave minimal weight to Dr. Billings' opinion that Plaintiff's difficulty in continuing to complete tasks without resting would be a barrier in a work environment because she appeared to rely too heavily upon Plaintiff's discounted subjective complaints. Tr. 27, 1081. A physician's opinion may be

---

[2] The State agency psychological consultant found insufficient evidence to establish a mental medically determinable impairment. Tr. 113-25.

rejected if it is based on a claimant's subjective complaints which were properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999). Here, the ALJ noted that Dr. Billings' opinion that Plaintiff would need to rest was based on Plaintiff's self-reports because Plaintiff was never prescribed rest during the day by a treating provider. Tr. 27 (citing Tr. 1071-81). In the psychological assessment, Dr. Billings discussed a review of Plaintiff's medical documents. Tr. 1075-76. In her review of Plaintiff's medical record, Dr. Billings did not cite to any diagnoses of fatigue or recommendations that Plaintiff rest during the day. Tr. 1075-76. However, Dr. Billings did note that Plaintiff reported to Dr. Billings that she had fatigue "all the time." Tr. 1075. Thus, it was reasonable for the ALJ to infer that this opinion relied more heavily upon Plaintiff's subjective allegation that she felt she could not work due to constant fatigue. *See Molina*, 674 F.3d at 1111 ("[W]e must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."). Because the ALJ provided clear and convincing reasons to discredit Plaintiff's subjective symptom reporting, discussed *infra*, the ALJ reasonably discredited Dr. Billings' rest limitation for being based on Plaintiff's self-reporting. Tr. 27.

### b. Offers No Opinion

Plaintiff asserts the ALJ erred by failing to address Dr. Billings' findings that Plaintiff would often be unable to continue her assigned activity and would need to leave a situation to calm down, and that Plaintiff needed directions repeated. ECF No. 15 at 15–17 (citing Tr. 1072, 1081). "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a), 416.927(a). The Ninth Circuit has found no error in ALJ decisions that do not weigh statements within medical records when those records do not reflect physical or mental limitations or otherwise provide information about the ability to work. *See, e.g.*, *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (recognizing that when a physician's report did not assign any specific limitations or opinions regarding the claimant's ability to work, "the ALJ did not need to provide 'clear and convincing reasons' for rejecting [the] report because the ALJ did not reject any of [the report's] conclusions.").

First, a review of Dr. Billings' psychological assessment shows her statement that Plaintiff would often be unable to continue her assigned activity and would need to leave a situation to calm down was a notation about Plaintiff's

ORDER - 30

subjective complaints and not the opinion of Dr. Billings. Tr. 1081. This

statement appears in a paragraph that discusses Plaintiff's own reports. *See* Tr.

1081 ("She reports having similar bouts of confusion when there is a lot going on

around her such as in the grocery store or when there are loud noises. She will

often be unable to continue with her assigned activity and must leave the situation

in order to calm down."). Reading this statement in context, it is clear that this was

not a medical opinion as to Plaintiff's functional limitations and therefore, the ALJ

did not err by failing to give weight to this statement.

Second, a review of Dr. Billings' mental medical source statement shows

that Dr. Billings listed "repeating directions" as a capability that was affected by

Plaintiff's impairments. Tr. 1072. This was an opinion about Plaintiff's mental

restrictions, and thus, the ALJ was required to address this specific functional

limitation. 20 C.F.R. §§ 404.1527(a), 416.927(a). Defendant argues that Dr.

Billings' statement was an observation about how Plaintiff performed during

testing and not an opinion about Plaintiff's limitations in a work environment.

ECF No. 16 at 15 (citing Tr. 1081). However, Defendant cites to Dr. Billings'

psychological assessment, Tr. 1081, while Plaintiff's cites to Dr. Billings' mental

medical source statement, Tr. 1072. While Dr. Billings' statement about needing

directions repeated in her psychological assessment is written as an observation

rather than an opinion as to Plaintiff's functional limitations, the context of this

assessment in her mental medical source statement shows that she was opining as to a functional limitation. Tr. 1072, 1081. The ALJ erred by failing to weigh this opinion by Dr. Billings.

Finally, a review of Dr. Billings' mental medical source statement shows that the ALJ failed to weigh Dr. Billings' assessments of marked limitations in Plaintiff's ability to make judgments on complex work-related decisions, and moderate limitations in Plaintiff's ability to understand, remember, and carry out complex instructions or to respond appropriately to usual work situations and changes in a routine work setting. Tr. 1071-72. Plaintiff does not challenge the ALJ's failure to weigh Dr. Billings' opined marked and moderate limitations. The Court ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (determining Court may decline to address on the merits issues not argued with specificity); *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief). However, the ALJ's failure to weigh these opined marked and moderate limitations resulted in an RFC devoid of any nonexertional limitations except for those related to interaction with coworkers and the general public. Tr. 22. Moreover, the hypotheticals posed to the vocational expert by both the ALJ and Plaintiff's counsel were also silent as

to any functional limitations related to the necessity to have directions repeated, or the ability to make judgments on complex work-related decisions, to understand, remember, and carry out complex instructions, or to respond appropriately to usual work situations and changes in a routine work setting. Tr. 79-83, 1071-72. Therefore, the ALJ erred by failing to weigh these opinions by Dr. Billings. Because this case is being remanded to reconsider the medical opinion of Dr. Moyer, the Court declines to engage in harmless error analysis here. The ALJ is instructed to readdress this medical opinion evidence on remand.

### C.    Other Challenges

Plaintiff also raises challenges to the ALJ's analyses at steps two and three. ECF No. 15 at 4-19. The Court declines to address these challenges here. However, the Court briefly addresses the following. As noted by Plaintiff, the record includes references to headaches/post-concussive syndrome and fibromyalgia. ECF No. 15 at 5-7. The ALJ did not address headaches/post-concussive syndrome or fibromyalgia in her decision. On remand, the ALJ is directed to make a conclusion as to whether headaches/post-concussive syndrome and fibromyalgia are medically determinable impairments, and if so, whether these impairments are severe.

## D.  Remedy

Plaintiff urges this Court to remand for an immediate award of benefits, or to reassess all of the medical opinions.  ECF No. 15 at 15; ECF No. 17 at 10-11.

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court."  *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985)).  When the Court reverses an ALJ's decision for error, the Court "ordinarily must remand to the agency for further proceedings."  *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).  However, in a number of Social Security cases, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three conditions are met.  *Garrison*, 759 F.3d at 1020 (citations omitted).  Under the credit-as-true rule, where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on

ORDER - 34

remand, the Court will remand for an award of benefits. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017). Even where the three prongs have been satisfied, the Court will not remand for immediate payment of benefits if "the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, further proceedings are necessary. As discussed *supra*, the ALJ erred by failing to evaluate Dr. Moyer's opinion that Plaintiff should work part-time. Tr. 1087. However, Dr. Moyer's opinion was contradicted by the nonexamining opinion of Dr. Irwin, Tr. 113-25, and the examining opinion of Dr. Drenguis, Tr. 818-23. The ALJ gave great weight to the opinion of Dr. Irwin, and significant weight to the opinion of Dr. Drenguis. Tr. 26-27. Even if the ALJ were to have fully credited Dr. Moyer's opinion, the evidence would present an outstanding conflict for the ALJ to resolve. Therefore, further proceedings are necessary for the ALJ to resolve potential conflicts in the evidence. Moreover, neither the ALJ nor Plaintiff's counsel presented a hypothetical to the vocational expert that included any mental limitations other than those related to interactions with others. Tr. 79-83. Therefore, it is not clear whether the ALJ would be required to find Plaintiff disabled if Dr. Billings' opined limitations in having directions repeated, her ability to make judgments on complex work-related decisions, understand, remember, and carry out complex instructions, and respond appropriately to usual

work situations and changes in a routine work setting, were credited as true.  Tr. 1071-72.

The ALJ is instructed to reconsider the medical opinions of Dr. Moyer and Dr. Billings on remand, to evaluate headaches/post-concussive syndrome and fibromyalgia at step two, and to conduct a new step three analysis.  The ALJ is also directed to conduct a new analysis at steps four and five in light of the new assessment of the medical opinion evidence pertaining to Plaintiff's physical and mental impairments, as well as the new analyses at steps two and three.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error.  Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

//

//

//

//

//

//

ORDER - 36

3. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED March 26, 2020.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 37